490 So.2d 1140 (1986)
DAVENPORT PRODUCTION CORPORATION (Owner) The Permian Corporation (Purchaser) Plaintiffs-Appellants,
v.
SECRETARY OF LOUISIANA, DEPARTMENT REVENUE AND TAXATION, Defendant-Appellee.
No. 17851-CA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 1986.
Rehearing Denied July 17, 1986.
*1141 Joel M. Sermons, Shreveport, for plaintiffs-appellants.
Art B. Haack, Baton Rouge, Pugh & Pugh by Robert G. Pugh, Shreveport, for defendant-appellee.
Before MARVIN, JASPER E. JONES, and LINDSAY, JJ.
MARVIN, Judge.
The owner-producer and the purchaser of oil appeal a judgment affirming the Board of Tax Appeals' denial of their claim for a refund of severance tax that was voluntarily, but erroneously, overpaid for 30 months on production from three "stripper" oil wells located in Caddo Parish. We affirm. LRS 47:1621(B).
Appellants complain that, during the 30 months in question, each well produced less than 10 barrels of oil per day and was thus qualified for the lower tax rate levied on stripper wells (¼ of 12.5 percent rate, or 3.125 percent). LRS 47:633(7)(c). The claim was denied because neither Davenport Production Corporation, the owner-producer, nor Permian Corporation, the purchaser, had certified to the Department of Revenue as required by law, "on or before the last day of the month of production" that each well was qualified for stripper well status and taxation. § 633(7)(c).
We find that the Collector's statutory authority in LRS 47:1621 to permit refunds does not apply where the overpayment was caused by the taxpayer's failure to comply with the Department's certification requirements to obtain the stripper well severance tax rate. Upon judicial review of the administrative proceedings, we consider and *1142 defer to the Department's regulations, promulgated under legislative authority, and the Department's administrative interpretation of those regulations. LRS 47:1511; Triangle v. PPG Industries, Inc., 332 So.2d 777 (La.1976). Refunds for overpayment are due only in limited circumstances. § 1621(B).

FACTS
D.A. Simpson is the sole shareholder of Davenport Production Corporation, whose wells are located on Simpson family property. Simpson went into the production business, without prior experience, shortly after retiring from a business unrelated to the oil and gas industry.
Davenport sold production from the three wells to Permian. At the end of each month between January 1980 and June 1982, the purchaser, as required by law, withheld severance tax from its payments to Davenport and paid the tax to the Department of Revenue at the ordinary severance tax rate of 12½ percent of production value. LRS 47:633(7)(a). See also LRS 47:632 and 635-638. Stripper well production is taxed at 3 1/8 percent of value, or one-quarter of the ordinary rate. LRS 47:633(7)(c).
In June 1982, Simpson learned of the lower tax rate on stripper well production while discussing another tax matter with a Department of Revenue employee. Simpson explained to the Board of Tax Appeals:
It was by accident that I found out about it ... I [telephoned] and in my conversation... [the Department employee] mentioned the subject of my severance tax reports and I said "what severance tax reports." He said you mean you are not filing severance tax reports. I said no, I never heard of it. I said that I filed all of my report[s] with the Louisiana Department of Conservation and I sent them a report each month and I said if that report is not in there timely on that production a lady from Baton Rouge calls me. And he said, "you are supposed to have a severance tax report filed." (Emphasis added.)
In accord with LRS 47:633(7)(c) and Department of Revenue Regulations, Davenport then filed certification forms that qualified the three wells for stripper status and the lower taxes beginning July 1982. Since that time Davenport has provided the Department with the proper monthly certification and has paid monthly only the lower severance tax rate.
In August 1982, Davenport applied for a refund of the overpayments ($4,251.88 for 1980, $6,943.19 for 1981, and $2,720.93 for the months prior to July 1982). Davenport submitted monthly reports from Permian, showing the number of barrels produced, the price paid per barrel, and a sum representing the 12½ percent tax withheld and paid. Each monthly report, however, indicated only total purchases by Permian from the three wells and not the data from each well. For each month, the total production from all three wells was less than 200 barrels, a strong indication that each well was in fact a stripper. Arguendo, we shall so assume.
The Department denied the refund. Davenport and Permian then petitioned the Board of Tax Appeals for formal review. The Board also denied the claim specifically on Davenport's failure to provide stripper well certification for each month during the period. The district court affirmed that decision and this appeal followed.

STATUTES; REGULATIONS
Severance tax rates are set forth in LRS 47:633, which states, in part:
The taxes on natural resources severed from the soil or water levied by R.S. 47:631 shall be predicated on the quantity severed and shall be paid at the following rates: * * *
(7)(a) On oil twelve and one-half percentum of its value at the time and place of severance * * *
(c) On oil produced from a well classified by the commissioner of conservation as an oil well, and determined by the collector of revenue that such well is incapable of producing more than *1143 ten barrels of oil per day, the tax rate applicable to the oil severed from such well shall be one-quarter of the rate set forth in Subparagraph (a) of this Paragraph (7) and such well shall be defined, for severance tax purposes, as a stripper well; provided, however, that such well has been certified as a stripper well to the collector of revenue on or before the last day of the month following the month of production. (Emphasis added.)
Appellants insist that the monthly rate of tax is a matter of substantive law determined solely by the amount of production from each well and not by the "procedural" requirement for monthly certification of stripper wells. Relying on the assumed factual showing that the wells have produced only as stripper wells since completion, appellants contend that their statutory "substantive right" to a refund for the overpayments is unaffected by their failure to certify each well each month during the period in question. We must disagree.
The lower tax rate for stripper well production applies when the collector determines, on the basis of monthly certified reports submitted by the taxpayer, that the well is incapable of producing more than 10 barrels per day. The tax is paid monthly. To maintain stripper well status, the taxpayer must thereafter certify the well "on or before the last day of the month following the month of production." The required reports are in addition to other reports required of all severers and purchasers, regardless of well status, under LRS 47:635 and 640.
The Department of Revenue's Severance Tax Regulation 633:74-I(c) provides:
A taxpayer may qualify for the lesser tax rates levied in R.S. 47:633(7) ... (c)... by certifying and reporting production, test data, etc., on forms and instructions prescribed by the Collector of Revenue. Applications for reduced tax rates must be submitted to the Collector of Revenue on or before the last day of the month following the month in which production subject to reduced tax rates occurs.
The Department has devised forms 0-1S, 0-1d, 0-10, and 0-3 to facilitate reporting and certification of stripper wells and other wells upon which the severance tax is applicable. Form 0-3, used for monthly reporting of continuous certification data, is the form that provides for production reports by individual well. Davenport began filing the monthly 0-3 report only after July 1982.
The Department regulations and the statute place the duty on the taxpayer to timely obtain and submit the required forms and reports each month. A Department employee testified before the Board of Tax Appeals that
A. We have approximately 15,000 wells certified by the incapable and stripper rates and in order to be ... we have really had some sad cases come before us and in order to be fair and impartial and be able to enforce it at all we have taken a strict line and gone strictly by what the statute says. In order to qualify for the reduced tax rate, they must be certified on or before the last day following the month of production. We have enforced that completely and impartially. What chaos might result if we began having to decide on an individual basis ... Well, many times the wells we deal with in particular flip-flop from one category to the next and we could have many, many producers going back three years and asking for refunds. We had one fellow bring up three years worth of certification and 03 filings. He wanted to back date everything for three years and brought them all up in a wheelbarrow. We denied him.
Q. Why is it that the Department cannot rely on the Department of Conservation's records?
A. Because we have a master certification list of 15,000 wells and they vary from month to month. It would be a tremendous task to try to approve each well on a monthly basis without [the *1144 taxpayer] furnishing us the information to verify it.
The statutes and administrative regulations providing for the special tax rate, as an exception to the ordinary tax rate, must be strictly construed and, when challenged, the construction consistently given those statutes and regulations by the agency charged with applying them is to be given great weight. Triangle, supra. The manner in which the legislature authorized this special tax rate inextricably links the amount of oil actually produced each month to the administrative requirements for timely reporting and certification by the taxpayer each month. The taxpayer is not substantively entitled to the lower monthly rate until the status of a well is "determined by the collector" on the basis of the certification and the reports that are required of the taxpayer each month.
Absent special statutory authorization, the fact that the tax was paid voluntarily, but in error, does not entitle appellants to a refund, regardless of whether the tax was due in fact or in law. The Civil Code articles regulating the rights of private parties who make and receive payments in error do not apply to collection or refund of taxes. See Crescent City Building & Homestead Ass'n. v. City of New Orleans, 19 La.App. 613, 141 So. 412 (1932); Gillette Tire Distrib. v. City/Parish, Etc., 345 So.2d 1255 (La.App. 1st Cir.1977), and cases cited therein.
Section 1621(B) authorizes the collector to make refunds for overpayments only under these circumstances:
(1) The tax was overpaid because of an error on the part of the taxpayer in mathematical computation; or
(2) The tax was overpaid because of a construction of the law on the part of the taxpayer contrary to the collector's construction of the law at the time of payment.
(3) The overpayment resulted from a change made by the collector in an assessment under the provisions of R.S. 47:1565(C).
The record indicates that the overpayment occurred because of the ignorance of either or both Davenport and Permian and not because of any mathematical error or any dispute between them and the collector regarding the construction of a tax law at the time of payment. § 1621(B)(1) and (2).[1] See United Gas Corporation v. Fontenot, 241 La. 564, 129 So.2d 776 (1961).
We are not called upon to determine which of the two corporations is required to certify wells for the lower stripper well severance tax. Section 635 provides
Except as otherwise provided in this part, the making of the reports, and the payment of the taxes, shall be by those actually engaged in the operation of severing...
Sections 635, 637, and 638 require the severer (Davenport) to withhold the tax unless the production is sold. Where production is sold, the purchaser (Permian) is required to withhold the tax and the severer is relieved of its obligation to do so.
Although Section 640 also requires the purchaser to file certain reports with the department of revenue, regardless of well status, that statute, unlike those governing the obligation to withhold tax, does not relieve the severer of his obligation to file similar reports with the department. The only evidence of any reports filed by Davenport is Simpson's testimony that he initially filed reports with the Department of Conservation and was unaware of the Department of Revenue's reporting or filing requirements.
*1145 Section 633(7)(C) and its related provision in the Department of Revenue's Regulations outline additional reporting requirements for those who seek the lower tax rate on stripper wells. Section 633(7)(C) does not specify who must file the report, but the department's regulations require the "taxpayer" to file. The department does not, in this record, explain who the taxpayer is or offer a statutory or regulatory definition of the term. Unless the monthly certification is timely filed by the severer or the purchaser when the monthly severance tax is paid, however, a refund of any overpayment resulting from the failure to file the monthly certification is not owed by the state. § 1621(B).
At appellants' cost, We AFFIRM.
NOTES
[1] LRS 47:1621(D) provides:

This section shall not be construed to authorize any refund of tax overpaid through a mistake of law arising from the misinterpretation by the collector of the provisions of any law or of the rules and regulations promulgated thereunder. In the event a taxpayer believes that the collector has misinterpreted the law or promulgated rules and regulations contrary therewith, his remedy is by payment under protest and suit to recover, or by appeal to the board of tax appeals in instances where such appeals lie.