506 So.2d 528 (1987)
SECRETARY OF the DEPARTMENT OF REVENUE AND TAXATION, State of Louisiana
v.
TEXAS GAS EXPLORATION CORPORATION.
No. 85 CA 1533.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
Rehearing Denied May 6, 1987.
*529 Arthur B. Haack, Baton Rouge, for plaintiff-appellant Secretary of the Department of Revenue and Taxation and State of Louisiana.
Rudolph Ramelli, Baronne, New Orleans, for defendant-appellee Texas Gas Exploration Corporation.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment affirming the Board of Tax Appeals' judgment vacating and setting aside severance tax assessments.

FACTS
On August 8, 1983, the Secretary of the Department of Revenue and Taxation, State of Louisiana, (Department) gave notice to Texas Gas Exploration Corporation (Texas Gas) of an assessment of Louisiana severance tax for December 1, 1979, through December 31, 1982. The severance tax was assessed pursuant to LSA-R.S. 47:633(7)(a) at the rate of 12½% and totalled $44,767.51. Interest in the amount of $12,816.70 was also assessed, bringing the total amount due to $57,584.21.
This severance tax assessment was related to the production from the Bayou Choctaw Field in Baton Rouge, Louisiana, and specifically to the Wilbert's Myrtle Grove Wells numbers 24, 31 and 39 (Myrtle Grove Wells) and Gay Union Corporation Wells numbers 29, 36 and 46 (Gay Union Wells). The Myrtle Grove Wells and the Gay Union Wells were certified by the Commissioner of Conservation and determined by the Department to be "stripper wells," or wells incapable of producing more than ten barrels of oil per day, which under the provisions of LSA-R.S. 47:633(7)(c) "the tax rate applicable to the oil severed from such well shall be one-quarter of the rate set forth in Subparagraph (a) of this Paragraph (7)...."
After certification of the wells as stripper wells, Texas Gas began payment of the severance tax on the Myrtle Grove Wells and Gay Union Wells in the following manner. At the end of the month following the month of production, Texas Gas filed a severance tax return paying the full 12½% rate on the oil produced. When the final production information was obtained, Texas Gas filed a severance tax form 0-3 "Monthly Incapable and Stripper Oil Well Report" for the month of production at the end of the second month after the month of production. At that time, the overpayment of the severance tax for the month of production was adjusted.
Texas Gas consistently followed this method of reporting severance tax, consistently overpaying the tax on the Myrtle Grove Wells and Gay Union Wells then recouping the overpayment by filing a form 0-3 by the end of the second month following production.
On August 8, 1983, the Department gave notice to Texas Gas that it owed $57,584.21 in severance tax and interest. The Department claimed that the Louisiana severance tax rate with respect to the Myrtle Grove *530 Wells and Gay Union Wells is due at the rate of 12½% pursuant to LSA-R.S. 47:633(7)(a) because Texas Gas failed to timely file form 0-3. Texas Gas claimed that it complied with the requirements of LSA-R.S. 47:633(7)(c) and is entitled to a severance tax rate of only 31/8%.
Texas Gas appealed the Department's assessment to the Board of Tax Appeals. After a hearing, the Board on July 5, 1984, rendered judgment in favor of Texas Gas and against the Department, vacating and setting aside the severance tax assessment and interest from December 1, 1979, through December 31, 1982. Thereafter, the Department appealed the decision of the Board, which was affirmed by the trial court.
From this judgment, the Department appeals, contending that the Board and the trial court erred in not finding that the failure of Texas Gas to file monthly reports in strict compliance with LSA-R.S. 47:633(7)(c) results in a denial of the lower severance tax rate.

DISCUSSION
LSA-R.S. 47:633 provides the rate at which severance taxes are levied on the natural resources severed. The pertinent portions of LSA-R.S. 47:633 are subsection (7)(a) and (c), which provide as follows:
(7)(a) On oil twelve and one-half percentum of its value at the time and place of severance. Such value shall be the higher of (1) the gross receipts received from the first purchaser, less charges for trucking, barging and pipeline fees, or (2) the posted field price. In the absence of an arms length transaction or a posted field price, the value shall be the severer's gross income from the property as determined by R.S. 47:158(C).
. . . . .
(c) On oil produced from a well classified by the commissioner of conservation as an oil well, and determined by the collector of revenue that such well is incapable of producing more than ten barrels of oil per day, the tax rate applicable to the oil severed from such well shall be one-quarter of the rate set forth in Subparagraph (a) of this Paragraph (7) and such well shall be defined, for severance tax purposes, as a stripper well; provided, however, that such well has been certified as a stripper well to the collector of revenue on or before the last day of the month following the month of production.
Further, the Department's Severance Tax Regulation 633:74 I(C) provides:
A taxpayer may qualify for the lesser tax rates levied in R.S. 47:633(7) ... (c)... by certifying and reporting production, test data, etc., on forms and instructions prescribed by the Collector of Revenue. Applications for reduced tax rates must be submitted to the Collector of Revenue on or before the last day of the month following the month in which production subject to reduced tax rates occurs.
The statutes and administrative regulations providing for the special tax rate is an exception to the ordinary tax rate, must be strictly construed and, when challenged, the construction consistently given those statutes and regulations by the agency charged with applying them is to be given great weight. Traigle v. PPG Industries, Inc., 332 So.2d 777 (La.1976); Sales Tax District No. 1 of Lafourche Parish v. Express Boat Co., Inc., 486 So.2d 947 (La. App. 1st Cir.1986), amended and affirmed, 500 So.2d 364 (La.1987).
Clearly, the manner in which the legislature authorized this special tax rate inextricably links the amount of oil actually produced each month to the administrative requirements for timely reporting and certification by the taxpayer each month. The lower tax rate for "stripper well" production applies when the collector determines, on the basis of monthly certified reports submitted by the taxpayer, that the well is incapable of producing more than ten barrels per day. The tax is paid monthly. To maintain "stripper well" status, the taxpayer must thereafter certify the well "on or before the last day of the month following the month of production." The required reports are in addition to other reports *531 required of all severers and purchasers, regardless of well status, under LSA-R.S. 47:635 and 640. Davenport Production Corporation v. Secretary of Louisiana, Department Revenue and Taxation, 490 So.2d 1140 (La.App. 2nd Cir.1986), writ denied, 496 So.2d 327 (La.1986). The taxpayer is not substantively entitled to the lower monthly rate until the status of a well is "determined by the collector" on the basis of the certification and the monthly reports required of the taxpayer.
In the instant case, Texas Gas is not entitled to the lower rate of tax for failing to comply with monthly filing requirements of LSA-R.S. 47:633(7)(c) and the corresponding tax regulation. As such, the Board and the trial court erred in setting aside the severance tax assessment and interest.

CONCLUSION
For the above reasons, the judgments of the Board of Tax Appeals and the trial court setting aside the severance tax assessment by the Department of Revenue and Taxation and interest from December 1, 1979, through December 31, 1982, are reversed. Judgment is rendered in favor of the Secretary of the Department of Revenue and Taxation and against Texas Gas Exploration Corporation for the deficiency in Louisiana severance tax for the period of December 1, 1979, through December 31, 1982, in the amount of $44,767.51 together with statutory interest as provided by law from December 1, 1979, until paid. Texas Gas Exploration Corporation is assessed with all costs of this appeal.
REVERSED AND RENDERED.