667 So.2d 552 (1995)
Charles L. LIBERTO, Jr. d/b/a "Late Nite", Plaintiff-Appellant,
v.
RAPIDES PARISH POLICE JURY, et al., Defendant-Appellee.
No. 95-456.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1995.
Rehearing Denied February 26, 1996.
*553 Daniel Elmo Broussard Jr., Alexandria, for Charles L. Liberto Jr. d/b/a "Late Nite."
Robert L. Bussey and Thomas Overton Wells, Alexandria, for Rapides Parish Police Jury, et al.
Albin Alexandre Provosty, Alexandria, for William Earl Hilton, Sheriff.
Before DOUCET, C.J., and AMY and SULLIVAN, JJ.
SULLIVAN, Judge.
This is an action for a declaratory judgment and injunctive relief. This suit concerns the statutory and constitutional validity of a specific section of the Rapides Parish Alcoholic Beverage Ordinance.
By a single act passed on June 14, 1995, the Rapides Parish Police Jury (police jury) repealed the former Chapter Four Alcoholic Beverage Ordinance and enacted a new version of said ordinance. Pursuant to its own terms, the comprehensive new ordinance was to become effective on January 1, 1995. Section 4-3(B)(3) of the ordinance, which is at issue in this case, provides:
It shall be unlawful for any house of public entertainment as provided in Louisiana Revised Statute Title 33:1236(6) to permit the consumption of alcoholic beverages at their establishment or place of business in the Parish of Rapides (outside the corporate limits of incorporated villages, towns and cities) between the hours of 2:00 a.m. and 6:00 a.m. on any day.
On December 8, 1994, plaintiff, Charles Liberto, Jr. d/b/a "Late Nite," the owner of a "bottle club" which does not sell liquor but provides mixers, soft drinks, and drink set-ups, filed the present action against the police jury and Rapides Parish Sheriff William Earl Hilton. Liberto's business is open from twelve midnight to five a.m. on Saturday and Sunday mornings and provides entertainment. It allows patrons to bring their own alcoholic beverages and charges an admission fee. In his petition, Liberto alleged the invalidity of ordinance section 4-3(B)(3) for several reasons. First, he asserted that the section regulated businesses which are beyond the scope of the comprehensive ordinance as expressed in section 4-2 thereof. Second, Liberto contended that section 4-3(B)(3) unconstitutionally violated his due process and equal protection rights and was not rationally related to a legitimate purpose of the police jury's police power.
*554 Liberto sought a judicial declaration that section 4-3(B)(3) is inapplicable to his business or, alternatively, that section 4-3(B)(3), if applicable, is unconstitutional as applied to his business. He also requested the issuance of a preliminary and a permanent injunction directing Sheriff Hilton not to enforce section 4-3(B)(3) after its effective date until a final decision on the merits of his petition is rendered. Both the police jury and Sheriff Hilton filed answers generally denying the allegations of Liberto's petition.
The trial court held a hearing on this matter on December 19, 1994. At the close of plaintiff's presentation, the defendants moved for involuntary dismissal of Liberto's action. The trial court granted the motion and, for oral reasons assigned, concluded that the plaintiff failed to carry his burden of proving the ordinance section's unconstitutionality. The trial judge also found that the police jury's action fell within the scope of its inherent police power to regulate alcohol.
The trial court signed a judgment dismissing Liberto's action with prejudice on January 9, 1995. Liberto devolutively appealed. For the reasons which follow, we affirm.

FACTS
The following summary of facts is derived from the evidence and testimony presented at the December 19, 1994 hearing. A certified copy of the Alcoholic Beverage ordinance was first entered into evidence by Angie Richmond, the police jury's secretary.
Liberto, the owner of "Late Nite" testified that his business is open from twelve o'clock midnight to five o'clock a.m. on Friday and Saturday evenings (Saturday and Sunday mornings) only. No alcoholic beverages are sold, distributed or handled by "Late Nite." It is located in an unincorporated area of Rapides Parish and is the only night club of its kind in the parish. Admission into the club is restricted to persons eighteen (18) years old and older for a five dollar cover charge. "Late Night" allows its patrons to bring their own liquor, and "Late Nite" sells them cold drinks, mixers and ice. Liberto stated that "Late Nite" furnishes music to the patrons over a sound system. Additionally, he hires an off duty sheriff's deputy to ensure adequate security.
Liberto also explained that, as a retired Louisiana State Police Trooper, he is vehemently against the use of illegal drugs. Signs are posted near and in the entrance warning those under eighteen (18) years of age not to enter and that anyone caught with drugs will be prosecuted. In the past, Liberto has refused admission to persons under eighteen (18) years of age. He also acknowledged having drug arrests take place, but he was unsure as to whether they occurred in the club or the parking lot. In any event, the hired deputy handled the situation each time.
Liberto asserted that he has fully cooperated with local narcotics agents in an effort to stem drug activity at "Late Nite." He has allowed the narcotics agents to operate undercover in the club on numerous occasions. He stated further that "Late Nite" is the most secure nightclub in the area. He has received no citizen complaints about his club and is unaware of an increase in crime in the area surrounding his club.
Liberto testified that, if the ordinance goes into effect, he will be unable to continue to operate "Late Nite" profitably at its current hours of operation. In his opinion, approximately one-half (½) of the "Late Nite" patrons consume alcohol while there, and a prohibition on such activity would negatively impact his business.
Liberto stated further that he was present at the June 7, 1994 police jury committee meeting when the new ordinance was voted out of committee and recommended for passage by the full police jury. He claimed that no other business except "Late Nite" was discussed at the meeting. He alleged that section 4-3(B)(3) was introduced by Richard Nunnally, a police jury member and fellow club owner, to stifle competition by shutting down "Late Nite." Liberto stated that Nunnally told him this.
On cross examination, Liberto conceded that, in a club such as "Late Nite" where 400 or more people regularly congregate, some illegal activity is bound to occur. He also stated that the potential for illegal activity is *555 increased by the presence of alcohol. Liberto further admitted that fights have occurred at "Late Nite." He acknowledged that a great number of the club's patrons come to "Late Nite" after drinking alcohol in other area bars. Additionally, he conceded that some patrons, after leaving his club, have thereafter been arrested for driving while intoxicated (DWI). However, he claimed that the DWI arrests which emanate from "Late Nite" are the smallest in number of any nightclub in Rapides Parish. He also reiterated that he has offered the Sheriff and the Louisiana State Police complete access to "Late Nite."
Also on cross examination, Liberto acknowledged that section 4-3(B)(3) of the ordinance does not prevent him from operating but merely regulates the hours of operation. He agreed that the ordinance does not prevent him from opening from two a.m. to six a.m.; it only prevents the consumption of alcohol on the premises between those hours.
Sheriff Hilton also testified at the hearing. His testimony was, for the most part, favorable to Liberto. He stated that "Late Nite" poses no more problems than any other nightclub in Rapides Parish. Sheriff Hilton also explained that the drug problem at "Late Nite" is no worse than at any other club, and that Liberto has been "100% cooperative" with sheriff department drug investigations. He said that Liberto does not encourage drug activity or DWIs at his club and has, on countless occasions, invited undercover narcotics agents to his premises.
On cross examination, Sheriff Hilton stated that the primary drug problem at "Late Nite" and all other parish bars is crack cocaine and crystal methamphetamine. He acknowledged that the regulation of bar hours assists the police in public protection, noting that the earlier closing hours results in less late night traffic and fewer intoxicated drivers. He conceded that "Late Nite" may thwart these efforts because it allows people to continue to drink after normal closing hours. According to Sheriff Hilton, if fewer bars are open, then fewer problems with DWIs exist.
Justin Forest, a Rapides Parish Sheriff's deputy, testified that he has worked off-duty as a security officer at "Late Nite" and other nightclubs in the parish. He assists the club's security personnel in maintaining peace and order and attempting to detect any criminal activity. Forest stated that the club management has been fully cooperative with the accomplishment of these objectives. Forest also said that "Late Nite" does not have any more problems than the other nightclubs in the parish. There is crime at "Late Nite," but it is no more or less than at any other club.

PROCEDURAL RULES
This case is before this court in an interesting procedural posture. The plaintiff is appealing from the trial court's grant of defendant's motion for involuntary dismissal of plaintiff's declaratory judgment and injunction actions. Due to the relatively unique procedural nature of this case, we will discuss the applicable procedural statutes and jurisprudence.

Declaratory Judgment
La.Code Civ.P. art. 1871 provides:
Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The declaration shall have the force and effect of a final judgment or decree.
The trial court may refuse to render a declaratory judgment if the judgment would not end the uncertainty or controversy giving rise to the proceeding. La.Code Civ.P. art. 1876. When a declaratory judgment would terminate the uncertainty or controversy, the trial court must render such judgment. The trial judge may choose or refuse to render a declaratory judgment which would not end the uncertainty. The trial court is vested with wide discretion in deciding whether to give or refuse declaratory relief. Morial v. Guste, 365 So.2d 289 (La.App. 4 Cir.), writ denied, 365 So.2d 1375 (La.1978). A suit *556 for declaratory judgment is an appropriate means of testing the constitutionality or applicability of an ordinance in which there is an actual controversy between the parties. It is available to test the validity of a criminal ordinance where a criminal prosecution has not yet begun. Vonderhaar v. Parish of St. Tammany, 633 So.2d 217 (La.App. 1 Cir. 1993).
Appellate courts, as well as the trial court, are granted broad discretionary power to determine whether declaratory relief may be appropriate in a particular suit. Atchafalaya Basin Levee District v. Pecquet, 364 So.2d 610 (La.App. 1 Cir.1978). On appeal, the scope of our appellate review is a determination of whether or not the trial judge abused his discretion by granting or refusing to render a declaratory judgment. Ricard v. State, 544 So.2d 1310 (La.App. 4 Cir.1989); Associated Indemnity Corporation v. Louisiana Industries Prestressed Corporation, 259 So.2d 89 (La.App. 4 Cir.1972).

Injunction
La.Code Civ.P. art. 3601 authorizes the issuance of an injunction "in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law ..." In General Motors Acceptance Corporation v. Daniels, 377 So.2d 346, 348 (La.1979), the Supreme Court of Louisiana explained the mover's burden as follows:
To obtain a preliminary injunction under Article 3601 the moving party must show that the injury, loss or damage he will suffer may be irreparable if the injunction does not issue. He must of course show that he is entitled to the relief sought and must make a prima facie showing that he will prevail on the merits of the case. Price v. State, Department of Public Safety, License Control and Driver Improvement Division, 325 So.2d 759 (La.App. 1st Cir.1976); Melancon v. Assumption Parish Police Jury, 231 So.2d 690 (La.App. 1st Cir.1970).

Involuntary Dismissal
A motion for involuntary dismissal is authorized in La.Code Civ.P. art. 1672(B), which provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In Shafer v. State, through DOTD, 590 So.2d 639, 642 (La.App. 3 Cir.1991), this court explained the rules applicable to such a motion as follows:
In non-jury cases, the appropriate standard for the trial court's determination of a motion to dismiss is whether the plaintiff has presented sufficient evidence on his case-in-chief to establish his claim by a preponderance of the evidence. In making its determination on such a motion, the trial court is not required to review the evidence in the light most favorable to the plaintiff as is done when a motion for directed verdict is filed in a jury case. Egle v. Kidd, 442 So.2d 669 (La.App. 1st Cir.1983). The judge is only required to weigh and evaluate all of the evidence presented up to that point and grant a dismissal if the plaintiff has failed to establish his claim by a preponderance of the evidence. Bradley v. Hunter, 413 So.2d 674 (La.App. 3rd Cir.1982), writ denied, 415 So.2d 952 (La.1982). A dismissal based on La.C.C.P. art. 1672(B) should not be reversed in the absence of manifest error. Smith v. Vernon Parish School Bd., 442 So.2d 1319 (La.App. 3rd Cir.1983), writ denied, 445 So.2d 451 (La.1984).
From the foregoing, it is evident that we are required to determine whether the trial court was manifestly erroneous in granting defendants' motions for involuntary dismissal of plaintiff's declaratory judgment and injunction actions.

OVERBREADTH
On appeal, plaintiff first argues that the scope of the ordinance does not include *557 the regulation of the consumption of alcoholic beverages. He asserts that, in enacting section 4-3(B)(3), the police jury went beyond the express bounds of the statute, thus rendering section 4-3(B)(3) overbroad. We disagree.
Section 4-2 of the Alcoholic Beverage Ordinance provides that the scope of Chapter Four is as follows:
The business of selling, handling, distributing or otherwise dispensing of alcoholic beverages in Rapides Parish outside any incorporated municipalities shall be regulated as provided in this chapter.
Liberto contends that the police jury cannot, by this statute, regulate his business which permits alcohol consumption because the word "consumption" is not reasonably encompassed within the scope of the regulatory phrase "selling, handling, distributing or otherwise dispensing."
The statutory and jurisprudential rules which provide for the construction and interpretation of state statutes are likewise applicable to the construction and interpretation of municipal and parochial ordinances. Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1 Cir.1984). Laws on the same subject matter must be interpreted in reference to each other. La.Civ.Code art. 13. This maxim is especially compulsory when a local government ordinance must be interpreted with reference to the state law enabling the local government to act by passage of the ordinance. La.R.S. 26:493, which authorizes local alcoholic beverage regulatory ordinances only for purposes of "protection of the public health, morals, safety and peace," is part of Chapter Two of Title 26. This title establishes the Office of Alcoholic Beverage Control and delineates its powers and functions. In its first section, La.R.S. 26:241, Chapter Two provides a listing of words and phrases and their respective definitions for purposes of the chapter. Paragraph five of section 241 defines "handle" as "sell, use, distribute, store, consume, or otherwise handle." (Emphasis ours.) It is therefore clear that the definition of "handle," as the word is intended to be used in Chapter Two of Title 26, includes the word "consume."
Based on this definition, we conclude that the phrase "consumption of alcoholic beverages," as contemplated by section 4-3(B)(3) of the ordinance, is encompassed within the expressed scope of the ordinance provided in section 4-2. It is reasonable to consider "consumption" to be a definitive type of "handling." Because the ordinance expressly regulates businesses which handle or allows handling of alcoholic beverages, it necessarily regulates business which permit consumption of alcoholic beverages. Therefore, section 4-3(B)(3) is not an impermissibly overbroad regulation in reference to the expressed scope of the ordinance. The trial court did not err in concluding that the ordinance is applicable to "Late Nite."

CONSTITUTIONAL ISSUES
Liberto next contends that section 4-3(B)(3) is an unconstitutional violation of his due process and equal protection rights. He contends that the police jury went beyond its inherent police powers because the regulation is not necessary for the protection of "public health, morals, safety and peace." La.R.S. 26:493.
In West Central Louisiana Entertainment, Inc. v. City of Leesville, 594 So.2d 973 (La.App. 3 Cir.1992), the owner of an after-hours club, which did not sell or serve alcohol but permitted patrons to bring their own alcoholic beverages, sought a declaratory judgment that a city ordinance forbidding the holder of a city occupational retail license from permitting patrons to consume or possess alcoholic beverages was likewise unconstitutional. The owner also sought injunctive relief. The ordinance was restricted to occupational retail license holders "whose principal business is that of amusement, including skating rinks, bowling alleys, theaters, dance halls, and amusement centers." Id. at 974. The trial court denied the relief sought, and this court affirmed. In so doing, we enunciated the following criteria by which such cases are to be evaluated:
The federal and state governments are prohibited from depriving a person of life, liberty or property without due process of law. U.S. Const.Amends. V, XIV; La. *558 Const. art. 1 Sec. 3 (1974). Under both substantive due process and equal protection analyses, unless an ordinance interferes with the exercise of fundamental, personal rights, or is drawn upon inherently suspect distinctions such as race or religion, its constitutionality is presumed. If such is the case, the challenged ordinance need only be rationally related to a legitimate state interest. City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515 (La. 1983); State v. Petrovich, 396 So.2d 1318 (La.1981). We recognize no fundamental right or suspect class involved in the present cases that would require heightened scrutiny.

* * * * * *
A city ordinance, like a state statute, is presumed to be constitutional and the party who attacks it has the burden of establishing by clear and cogent evidence that the ordinance is unconstitutional. This rule is strictly observed in cases involving ordinances enacted in the exercise of a city's police power. Hi-Lo Oil Company v. City of Crowley, 274 So.2d 757 (La.App. 3rd Cir.), writ refused, 277 So.2d 673 (La. 1973). Police power is the power of a governmental body to regulate reasonably the actions of its individual citizens in order to protect or promote public health, safety, morals, peace or general welfare. City of Shreveport v. Curry, 357 So.2d 1078 (La.1978). The test of whether an ordinance is a constitutionally valid exercise of police power depends on whether under all the circumstances, the regulation is reasonable and whether it is designed to accomplish a purpose properly falling within the scope of the police power. Wes-T-Erre Dev. v. Parish of Terrebonne, Etc., 416 So.2d 209 (La.App. 1st Cir.), writ denied, 421 So.2d 251 (La.1982).
Id. at 975-76.
In that case, this court concluded that the ordinance was rationally related to the legitimate governmental goals of reducing alcohol consumption by minors and crimes committed by intoxicated persons. We also found that shielding minors from the corrupting influences of older patrons of a business to be a legitimate city endeavor. We held that the ordinance at issue in West Central Louisiana Entertainment, Inc. was a permissible regulation within the scope of the city's police power and that the plaintiff/mover had failed to prove otherwise.
Liberto argues that the present case is factually distinguishable from the West Central Louisiana Entertainment, Inc. case. First, he urges that, unlike in the present case, the law enforcement officer's testimony in West Central Louisiana Entertainment, Inc. was wholly unfavorable to the nightclub. Also in that case, there was a documented increase in crime, neighborhood complaints, and parental complaints about minors drinking. Liberto contends that the law enforcement personnel testifying in this case spoke favorably of "Late Nite" and were opposed to the regulation of its operating hours. He urges that, unlike the West Central Louisiana Entertainment, Inc. case, there was no factual basis for the police jury to act that could make its regulation rationally related to a legitimate government interest.
We recognize that the West Central Louisiana Entertainment, Inc. case is somewhat factually different from the case sub judice. However, this distinction does not mandate a different legal result. In the present case, Sheriff Hilton testified that "Late Nite" has a problem with drug and criminal activity. While it may be the same as at other clubs in the parish, it still remains a problem for which law enforcement resources must be expended to deter the illegal activity. The sheriff also stated that, in his opinion, "Late Nite" does not encourage patrons to drive while intoxicated. However, he also admitted that regulation of closing hours results in less late night and early morning traffic and, consequently, fewer intoxicated drivers.
We conclude that the section 4-3(B)(3) of the subject ordinance is a legitimate exercise of the police jury's police power. It is rationally related to the legitimate governmental purposes of reducing drug and criminal activity and reducing the incidence of drunk driving. The ordinance does not impermissibly interfere with the business of "Late Nite" by *559 mandating closure thereof. "Late Nite" can remain open under the ordinance during its regular hours between 12 midnight and five a.m. on weekends. Its patrons, however, cannot consume alcoholic beverages between the hours of two a.m. and five a.m.
We view this limited regulation as necessary to the accomplishment of a proper purpose within the inherent police power of the police jury. The plaintiff failed to carry his burden of proof. The trial court did not err in granting the motion for involuntary dismissal on the declaratory judgment and injunction actions.

SUNDAY CLOSING LAW
Liberto next contends that the ordinance, insofar as it regulates his business between the hours of two a.m. and six a.m. on Sunday mornings, violates the Sunday closing law because it was not initially approved by parish voters. In 1986, the Louisiana Legislature repealed the former comprehensive Sunday closing laws and enacted a form of local option in La.R.S. 51:191, which provides:
Except as provided in R.S. 51:193 [motor vehicle dealer exemption], the governing authority of any parish or municipality may adopt ordinances regulating or prohibiting the opening of certain businesses and or the sale of certain stock or articles of merchandise on Sunday, if approved by the voters at an election called as provided in Chapter 6-B of Title 18 of the Louisiana Revised Statutes of 1950. (Bracketed addition added; emphasis added.)
In support of his argument, Liberto cites the case of City of Zwolle v. Polk, 93-1102 (La.App. 3 Cir. 9/14/94), 643 So.2d 201; writ denied, 94-2553 (La. 1/13/95), 648 So.2d 1339, wherein this court invalidated a city ordinance making it unlawful to "sell, serve or dispense any alcoholic beverage between the hours of 12:00 midnight, Saturday and 7:00 a.m. Monday." City of Zwolle, 93-1102 at p. 1, 643 So.2d at 202. In a per curiam opinion, this court reasoned that the specific La.R.S. 51:191 Sunday closing statute prevailed over the general La.R.S. 26:493 statute authorizing local government regulation of the sale of alcoholic beverages. We concluded that the ordinance, which was not submitted to a vote of the general electorate, violated the Sunday closing law.
After carefully reviewing the ordinance at issue in this case with reference to La.R.S. 51:191 and the City of Zwolle case, we conclude that neither is applicable to the present case. The ordinance at issue neither expressly prohibits "Late Nite" from opening nor does it expressly prohibit the sale of a certain merchandise. It only prohibits the consumption of alcohol at "any house of public entertainment" between two a.m. and six a.m. on Sundays. "Late Nite" can remain open during those hours and can still sell the same items to patrons as it did before the ordinance went into effect. Clearly, section 4-3(B)(3) does not fall within the ambit of the Sunday closing law and does not require general election approval.
For these reasons, section 4-3(B)(3) is not violative of the Sunday closing law.

DECREE
The judgment in favor of the Rapides Parish Police Jury and Sheriff William Earl Hilton and against Charles Liberto, Jr. d/b/a "Late Nite" is affirmed. Plaintiff-appellant, Charles Liberto, Jr. d/b/a "Late Nite" is cast with all costs of these proceedings.
AFFIRMED.