Dear Mr. Brennan:
You have requested an opinion of the Attorney General on behalf of the Board of Commissioners (Board) of the Ernest N. Morial New Orleans Exhibition Hall Authority (Authority). Your question concerns the applicability of a $1.00 per capita tax on the sale of tickets in Orleans Parish for sight-seeing tours (Tour Tax).
You specifically ask whether the legislative act and local ordinance imposing the Tour Tax can be interpreted so as to exclude Mississippi River non-gaming cruise boats (Boats). The Boats, in question, fall into two categories:
 (1) Boats that primarily offer an entertainment and dining experience, including luncheon, dinner, beverage service and live jazz performances. There are no tour guides or lecturers, although there is some narrative, constituting an incidental amenity.
 (2) Boats which are used merely to transport passengers from one place to another along the Mississippi River, with some incidental narrative.
We believe a brief discussion of the circumstances leading up to the adoption of the Tour Tax is necessary and relevant to the resolution of the issue before us.
The Authority was created pursuant to Act No. 305 of the 1978 Regular Session of the Louisiana Legislature (Act 305), as a political subdivision of the State. Its governing body consists of seven appointed Board members. The Authority was established to acquire, construct, improve, maintain and operate convention, exhibition, and tourist facilities in order to promote economic growth for the City of New Orleans (City).
To accomplish these purposes, Section 6 of Act 305 authorizes the Authority to levy and collect a one percent hotel occupancy tax, upon favorable resolution of the Board and approval by the New Orleans City Council and a majority of the electors of the City. This tax was approved and is currently being collected.
Prior to the 1994 Legislative Session, the Board explored options for additional tax revenues to help finance the PhaseIII Expansion of the Ernest N. Morial Convention Center — NewOrleans (Center). It appointed a Tour Tax Committee (Committee), consisting of Board members and representatives of the tourism industry. The Committee conducted a study and made recommendations for proposed additional taxes to the Board for consideration by the State Legislature. Among these recommendations were an additional hotel occupancy tax and the Tour Tax, in question.
Based on these findings and recommendations, the Louisiana Legislature enacted Act No. 42 of 1994 (Act 42) which amended Act 305, adding thereto, Section 20.2. The amendment authorized the Authority to impose the Tour Tax. Pursuant to Act 42, the Authority adopted Tour Tax Ordinance No. 2 (Ordinance). The Ordinance tracks the language in Act 42 and provides, in pertinent part, as follows:
 SECTION 1. As used in this ordinance, the following terms, words and phrases have the meaning ascribed to them in this Section of this ordinance, except when the context clearly indicates a different meaning.
 * * *
 "Per capita sight-seeing tour" means a sight-seeing tour sold to individuals and/or groups of individuals on a cost per person basis.
 "Sight-seeing tour" means a tour of places and things, including but not by way of limitation, points of interest, historic buildings, parks and other sites conducted by persons acting as sight-seeing guides and/or lecturers, and includes walking tours and those conducted on any type of vehicle or other means of conveyance.
 * * *
 SECTION 2. There is hereby levied from and after January 1, 1995, for the purposes set forth in the Act, the following tax:
 A tax of $1.00 on all tickets sold in the Parish of Orleans for (i) per capita sight-seeing tours in the Parish of Orleans and (ii) tours, a portion of which include sight-seeing in the Parish of Orleans. This tax is to be paid by the purchaser of the ticket to the seller of the ticket at the time of purchase.
Section 4 of the Ordinance further provides that the Tour Tax shall be collected by the Louisiana Department of Revenue and Taxation (Department) pursuant to a Contract of Agency (Contract) between the Department and the Authority. Under the terms of the Contract, the Department is empowered to collect and enforce the payment of the Tour Tax. Accordingly, the subject tax was implemented and has been collected from May of 1995 to present.
As previously noted, the Board appointed a study Committee to identify appropriate tax revenues to finance the Phase IIIExpansion of the Center. Chairing that Committee was William G. Langkopp, Executive Vice-President of the Greater New Orleans Hotel-Motel Association. We have reviewed a letter to you from Mr. Langkopp, dated December 15, 1997. We find the following excerpt to be relevant to the issue at hand:
 The committee set out to identify those components of our industry that reaped financial rewards from business generated by the Convention Center, but were not contributing through the collection of taxes on goods and services provide[d].
 We focused on the tour industry because that part of our industry seemed to be enjoying solid growth and we felt [it] could contribute in some way. Our research revealed that in fact there was no tax on bus tours and walking tours, which surprised us all. We also found out that the excursion boats "touring" the river were paying not only the applicable sales taxes, but also the amusement tax as well.
 With this information we in committee agreed that "tour" boats should not be called upon to assist, but that a $1.00 per head tax on walking and bus tours should be established.
 * * *
 The language used, "conveyance" and "per capita", comes from the city code relative to the regulations of tour buses. At no time was this language ever meant to apply to excursion boats.
Duplicate copies of the above letter of opinion were presented to the seven members of the Board and nine Committee members that either recommended, considered or adopted the Tour Tax. All unequivocally concur in the opinion expressed above that the Tour Tax is not applicable to the Boats. You evidence this by the submission of these duplicate originals signed in counterpart by the above referenced Board and/or Committee members. Consequently, the Tour Tax has never been imposed on, or collected from, the Boats. We turn now to the statutory and case law we believe to be relevant to your inquiry.
The basic tenets of statutory construction and interpretation which apply to Act 42 and the Ordinance are found in the Louisiana Civil Code and Title 1 of the Louisiana Revised Statutes. These tenets are applicable, not only to state statutes, but also to municipal and parochial ordinances.Liberto v. Rapides Parish Police Jury, 667 So.2d 552 (La.App. 3rd Cir. 1995), rehearing denied. Your attention is directed to the following Articles of the Civil Code:
 Art. 9. Clear and unambiguous law
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
 Art. 10. Language susceptible of different meanings
 When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.
 Art. 11. Meaning of words
 The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter.
 Art. 12. Ambiguous words
 When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
The following Sections of Title 1 are also applicable:
 § 3. Words and phrases; how construed
 Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
 § 4. Unambiguous wording not to be disregarded
 When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.
As previously noted, the Tour Tax is imposed on "per capita sight-seeing tours". By definition, "sight-seeing tour" means "a tour of places and things, including but not by way of limitation, points of interest, historic buildings, parks and other sites conducted by persons acting as sight-seeing guides and/or lecturers, and includes walking tours and those conducted on any type of vehicle or other means of conveyance".
You suggest that cruise boats may not necessarily constitute a "means of conveyance" as that term is used in the Ordinance. We disagree. The phrase "any vehicle or other means of conveyance", if read within its context, construed according to common and approved usage and given its generally prevailing meaning, is clear and would include boats.
However, we do find the phrase "sight-seeing tour" to be ambiguous. Although there is an attempt to define the phrase in the Ordinance, the definition is unclear. The statutory definition begins "Sight-seeing tour means a tour ", which begs the question (i.e., what is the definition of a "tour"?).
It would appear that a guided (i.e., with tour guide or lecturer) excursion through the Cabildo or carriage or bus rides through the streets of the French Quarter with a primary focus on a narrative of the many historic and interesting places therein would constitute "tours". However, a carriage or bus ride taken merely as a means of transportation from one point to another within the French Quarter, without the narrative of a guide or lecturer, would not likely be considered a "tour".
The distinction, we believe, is the primary object of the trip. In other words, if the primary object of the trip, regardless of the means of transportation or conveyance, is the visitation or observation of points of interest (e.g., historic building, parks, churches, cemeteries, planetariums, zoos and/or libraries) and it is accompanied by the narrative of a tour guide or lecturer, the trip would likely be considered a tour subject to the Tour Tax.
By contrast, using a boat as an example, if the primary
object of the cruise is an entertainment and dining experience (e.g., luncheon, dinner, beverage service and live jazz performances), the excursion would not appear to be a tour subject to the imposition of the Tour Tax. The fact that there may be some narration as an incidental amenity would, in our opinion, not convert the cruise into a "tour". The Tour Tax would likewise not apply to a boat, the primary purpose of which is to merely provide transportation from one place to another along the river.
Having found the Tour Tax Ordinance ambiguous with regard to the definition of a "sight-seeing tour", we believe it appropriate to apply the doctrine of contemporaneous construction. The rules of contemporaneous construction have been held applicable to local ordinances. Gautreau v. Board of Elec.Examiners of City of Baton Rouge, 167 So.2d 425 (La.App. 1st
Cir. 1964), rehearing denied. Under the doctrine, when a statute or ordinance contains latent ambiguities, despite superficial clarity, the Court may turn to the ordinance's legislative history for guidance. Bourque v. Bailey, 643 So.2d 236
(La.App. 3rd Cir. 1994), writ denied. When considering the legislative history, the reason for, and spirit of, the enactment should be considered so as to fairly secure and attain the ends proposed. Liller v. Louisiana Board of Alcoholic BeverageControl, 59 So.2d 222 (La.App. Orl. Cir. 1954), rehearing denied, and State v. Roberson, 72 So.2d 265, 225 La. 74.
Further, a court interpreting legislation under the rules of contemporaneous construction, should consider all of the factual evidence preceding, surrounding and following the enactment of the statute. Deshotels v. State Professional Imp.Committee, 430 So.2d 1198 (La.App. 1st Cir. 1983), writ denied.
It is axiomatic that the long settled contemporaneous construction by those charged with administering a statute or ordinance is given substantial or decisive weight in its interpretation, State v. B. P. Exploration and Oil, Inc.,686 So.2d 823 (La. 1997). More specifically, statutes, ordinances and administrative regulations providing for a special tax rate must be strictly construed and, when challenged, the construction consistently given same by the agency charged with applying them is to be given great weight. Secretary of the Department ofRevenue and Taxation v. Texas Gas Exploration Corp.,506 So.2d 528 (La.App. 1st Cir. 1987), writ denied.
As previously discussed, the exploratory Committee appointed to consider additional tax revenues concluded that the Tour Tax was a feasible solution. The Committee and the Board further determined that the Tour Tax should be imposed on those components of the tour industry (e.g., bus and walking tours) that were reaping financial rewards from the Authority without contributing in the form of the collection of taxes on the goods and services they provided. They further determined that the Boats were paying, not only the applicable state and local sales taxes, but also the amusement tax. For these reasons, the consensus of all members was to exclude the Boats from paying the Tour Tax and, to this end, it has never been collected therefrom.
It is clear from the discussions attendant upon the progress of the state legislation (Act 42) and the resulting Ordinance that there was never an intent to impose the Tour Tax on the subject Boats. In this regard, we find compelling the statements submitted by the Board and Committee members that either recommended, considered or adopted the Tour Tax. These statements unequivocally reflect the unanimous opinion of the inapplicability of the Tour Tax to the Boats. While our jurisprudence has held inadmissible the testimony of the intention of an individual legislator, it has recognized as admissible the intent of the legislative body as a whole.Authement v. Davidson 366 So.2d 986 (La.App. 1st Cir. 1978).
Applying the statutory and case law discussed above, it is our opinion that the Board's and/or Authority's interpretation that the Tour Tax is not applicable to the Boats is legally sustainable. Our opinion is limited to the two categories of Boats described hereinabove.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/sfj