Dear Ms. Sullivant:
We respond to your questions in the order presented.
 1. Can a Lawrason Act Municipality validly regulate the sale of alcoholic beverages without a referendum but by Ordinance duly adopted by the Governing authority?
Note first that R.S. 26:493 deals with the regulation of alcohol generally while R.S. 51:191 deals specifically with the narrow issue of Sunday sales. These statutes provide, respectively:
 § 493. Local regulatory ordinances
 Except as limited by the provisions of this chapter the various subdivisions of the state may regulate but not prohibit, except by referendum vote as provided by Chapter 3 of this Title or by legally authorized zoning laws of municipalities, the business of wholesaling, retailing, and dealing in alcoholic beverages. No parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more than is necessary for the protection of the public health, morals, safety, and peace. Local subdivisions, in adopting these regulatory ordinances, may provide, in addition to the ordinary penalties authorized by law for their violation, provisions which subject the permittee to having his permit suspended or revoked in the manner provided by law for the suspension or revocation of permits.
 § 191. Sunday closing law; local ordinances; election
 Except as provided in R.S. 51:193, the governing authority of any parish or municipality may adopt ordinances regulating or prohibiting the opening of certain businesses and/or the sale of certain stock or articles of merchandise on Sunday, if approved by the voters at an election called as provided in Chapter 6-B of Title 18 of the Louisiana Revised Statutes of 1950.
Pursuant to R.S. 26:493, a municipality may be considered "dry" only after a local option election has been held. Pursuant to R.S. 51:191, a local governing authority may prohibit the sale of alcoholic beverages on Sunday only after a local option election has been held. A local governing authority may regulate the sale of alcoholic beverages on Sunday by ordinance, without the necessity of an election, if the regulation does not rise to the level of a prohibition as defined by the jurisprudence. According to a recent appellate court ruling, a Sunday closing ordinance may be enacted only if an election is held. See Pappy's Inv. Group ofLake Charles vs. City of Lake Charles, 677 so.2d 1145 (La.App. 3rd Cir. 1996), at page 1147.
The issue of the validity of a Sunday ordinance limiting the sale of alcohol was addressed in the case of City of Zwolle v. Polk,643 So.2d 201 (La.App. 3rd Cir. 1994). In Zwolle, supra, the court held invalid an ordinance which prohibited the sale of alcoholic beverages on Sunday which was passed by the local governing body but not approved by the voters in an election. Thus, a local governing body may by ordinance regulate the sale of alcohol on Sundays, provided the regulation does not completely prohibit the sale of alcoholic beverages.
Further, in Liberto vs. Rapides Parish Police Jury, 667 So.2d 552
(La.App. 3rd Cir. 1995), the court held that an ordinance that regulated the consumption of alcohol on Sunday was a valid exercise of the police power of a police jury, even in the absence of a local option vote. The court found this decision to be compatible with the Zwolle case, because the ordinance in question, "only prohibits the consumption of alcohol at any `house of public entertainment' between two a.m. and six a.m. on Sundays." Liberto, supra, at page 558.
Thus, in response to your first question, only the electorate may in general prohibit the sale of alcohol within the Town of Benton, pursuant to R.S. 26:493, and only the electorate may prohibit the sale of alcohol on Sundays, pursuant to LSA-R.S. 51:191. The governing authority of the Town of Benton may by ordinance regulate the consumption of alcohol within the Town of Benton on Sundays, pursuant to the Liberto opinion cited herein. The governing authority may in general regulate the sale of such beverages heeding the limitation imposed by R.S. 26:493, specifically, that "no parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more that is necessary for the protection of the public health, morals, safety, and peace." To paraphrase, the regulation is illegally imposed by the municipality if the regulation rises to the level of a prohibition of sales of alcoholic beverages.
 2. If a Louisiana State Permit is issued for high alcohol content (above 6%) liquor sales and subsequently a referendum passes not allowing it, does the State permit remain valid?
Our response is yes, the state permit remains valid until withdrawn by the State or until such time as the permit is judicially challenged and held invalid by a court of law. In such a case a business already licensed to sell alcohol, but faced with the prospect of closure because of the negation of a previously issued liquor license by virtue of the new "dry" status, would in support of continued licensure argue as applicable the exception of R.S. 26:81B(1), providing:
 § 81. Location of business limited
 B. (1) No permit shall be issued by the commissioner or by any municipality or parish to authorize any business in any subdivision of the state where the business has been prohibited by referendum vote.
 * * *
 E. The prohibitions in this Section do not apply to any premises which are maintained as a bona fide hotel, or fraternal organization, nor to any premises which have been licensed to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the ordinance. (Emphasis added).
The Town of Benton is located within Bossier Parish, within the jurisdiction of the Second Circuit Court of Appeal. This appellate court has interpreted R.S. 26:81, and should the legal issue you raise in question two be litigated, we find controlling the case of O'Neal vs. Jackson Parish Police Jury, 658 So.2d 240
(La.App. 2d. Cir. 1995) wherein the court held:
 The grandfather clause in § 81 E, for businesses such as plaintiffs' which have been licensed to sell alcohol for at least one year, does not authorize or require the renewal of plaintiffs' liquor license in the face of local prohibition on alcohol sales "by referendum [or local option] vote" under § 81 B. This is true irrespective of whether the police jury exercises its option to adopt an ordinance formally recognizing the local option prohibition and providing penalties for its violation (§ 595), and in light of the legislative history of § 81, which we have summarized.
The argument exists that the O'Neal decision is controlling in your situation as the established jurisprudence. See StateThrough Dept. of Highways vs Haydel, 306 So.2d 836 (La.App. 4th
Cir. 1975), holding that "trial courts may be obliged (even in Louisiana's civil law system) to follow law declared by appellate courts . . ." See State, at page 837.
However, the Louisiana Third Circuit Court of Appeal took a very different position in the case of Sabine Parish Police Jury vs.Office of Alcoholic Beverage Control, 643 So.2d 187 (La.App. 3rd
Cir. 1994). The court, interpreting R.S. 26:81, rendered the following analysis:
 A clear reading of the statute at issue provides that the prohibitions, set forth in §§ A, B C, and D, do not apply to 1) premises which are maintained as a bona fide hotel, or to 2) any fraternal organization, or to 3) premises which have been licensed to sell alcoholic beverages for more than one (1) year prior to the adoption of the ordinance. See Sabine
at page 189.
According to the analysis of O'Neal, and in contradiction to the ruling of Sabine, R.S. 26:81 does not require the renewal of a liquor license in the face of a subsequent local prohibition on alcohol sales by referendum or local option vote. The court inO'Neal discounted the reasoning of Sabine, stating:
 To the extent that the third circuit's opinion in Sabine Parish Police Jury v. Office of Alcoholic Beverage Control, cited supra, is found to conflict with our interpretation of § 81 B and E, we respectfully decline to follow that opinion. O'Neal, at page 245.
As indicated, there is a split between the appellate courts, to-wit: one court considering the issue would allow a business already licensed for a year to continue to sale alcoholic beverages; the other court would disallow the sale of alcoholic beverages by such business previously licensed in the event of a "dry" vote. A trial court reconsidering the legal issue you present in your second question, aware of the split between the appellate courts, would be mindful of the doctrine of jurisprudence constante. This doctrine does not contemplate adherence to a principle of law announced and applied on a single occasion in the past, but when by repeated decisions in a long line of cases, a rule of law has been accepted and applied by the courts, these adjudications assume the dignity of jurisprudence constante. See Heinick v. Jefferson Parish School Board,701 So.2d 1047 (La.App. 5th Cir. 1997), at page 1049. A trial court considering the issue within the jurisdiction of the Second Circuit might be compelled to follow the reasoning of that appelllate court enunciated in the O'Neal decision. If the trial court ruled in conformity with O'Neal, the State permit would be rendered invalid. Thus, our response to your second question would differ if the matter occurred within another jurisdiction, particularly if the question arose within the Third Circuit, as that appellate court has already given an indication of its possible ruling vis-à-vis the Sabine case.
 3. If a Louisiana State Permit is issued but a Town does not issue a permit does the State Permit remain valid and allow high alcohol content (above 6%) liquor to be sold without a local permit?
Perhaps here it is important to note the facts as they pertain to the Town of Benton with respect to the issues discussed. Your third question presupposes that a local option election imposing a "dry" status upon the municipality has been held, and that a business has submitted an application for permits to the state and local authorities, which permit has been granted by the state but denied by the local authority.
We are informed that no such election has yet occurred in the Town of Benton, and that the town is "wet" with respect to such sales. Therefore, a state permit issued to an applicant, absent any other infirmity, is valid, and the question would become, what legal basis does the town have to withhold the permit? Note the law provides that if an applicant meets the qualifications imposed by law, (see R.S. 26:80), R.S. 26:86 requires that both local and state permits be issued, as that statute provides:
 The commissioner with respect to state permits and municipal authorities and parish governing authorities with respect to local permits may withhold the issuance of permits in the manner and under the terms and conditions specified in this Chapter; however, if a sales tax clearance is not issued, the permit shall be withheld. Nevertheless, if the sales tax clearance request is not processed within the time limitations provided in R.S. 26:78, the permit shall be issued if all other qualifications are met by the applicant. (Emphasis added).
Should your hypothetical circumstances factually occur, note that R.S. 26:75 prohibits a person from operating without the proper state and local permits, as that statute pertinently provides:
 A. No person shall do any act for which a permit is required by this Chapter or by local authorities acting hereunder unless he holds the proper state and local permit. Each day's conduct of business by dealer without such a valid, unsuspended permit constitutes a separate violation of this Chapter. (Emphasis added).
Again, the real answer lies within the jurisdiction of the courts, and an application of either the reasoning of the court in O'Neal
or the court in Sabine. Such a discussion with respect to the Town of Benton is premature, as the town electorate has not yet addressed the issue by way of local option election.
We hope the foregoing analysis is helpful to you. Should you have further questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: KERRY L. KILPATRICK
ASSISTANT ATTORNEY GENERAL
KLK:ams