GRILLO ET AL. *v.* STATE

[No. 99, October Term, 1955.]

*Decided February 15, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John F. Lillard, Jr.,* for appellants.

*Alexander Harvey, II, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Blair H. Smith, State's Attorney for Prince George's County,* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Mildred Grillo is appealing here from two convictions by the Circuit Court for Prince George's County for violations of the Alcoholic Beverages Law in the restaurant of the Lyre Club on Marlboro Pike at Coral Hills. Vincent Grillo, her husband, is appealing here from one conviction for a violation of the law in that restaurant.

Grillo testified that the club had been incorporated by three men under the laws of Maryland in 1953 under the name of "The Lyre Club, Inc." He stated that the purpose of the corporation is to have a place for people who work until 1 or 2 o'clock in the morning, such as "phone operators, bartenders, waitresses, owners of clubs, owners of restaurants, cab drivers, bus operators, anyone who is, by their profession, precluded from using a licensed place for relaxation because of the hours in which they work." He stated that Mrs. Grillo was the secretary of the corporation. Waverly Webb, Clerk of the

Circuit Court, testified that he had issued a trader's license and a restaurant license to Mrs. Grillo.

Two indictments were found by the grand jury against Mrs. Grillo. One charged her with knowingly permitting Robert N. Cabral to consume alcoholic beverages at the club on January 29, 1955, between 2 and 6 a. m. in violation of Code 1951, art. 2B, sec. 83 (a). The other charged her with knowingly permitting George E. Clements to consume alcoholic beverages at the club on June 7, 1955, between 2 and 6 a. m. in violation of the same provision.

Grillo was indicted for knowingly permitting Robert N. Cabral to consume alcoholic beverages at the club on June 8, 1955, between the hours of 2 and 6 a. m. in violation of Code Supp. 1955, art. 2B, sec. 99 (c).

On January 29, 1955, Cabral and Clements, detectives in the Prince George's County Police Department, entered the Lyre Club at 3 a. m. Officer Cabral testified that as he entered the door Grillo asked him if he had ever been there before. He replied that he had, and he gave the name of the man who had brought him. He then handed to Mrs. Grillo his overcoat and a bottle of whiskey. She pasted on the bottle a small label with the name of "Cabral" marked on it. She then handed the bottle to the bartender, who placed it on a shelf behind the bar. The detectives took seats at a table and ordered a waitress to bring them whiskey with ginger ale. After the whiskey was poured from Officer Cabral's bottle into two glasses containing ginger ale and ice, the waitress served the drinks to the detectives. After they had several drinks, they paid their bill, which included an admission fee of $1.50 each, and left the building at about 4 a. m.

The detectives returned to the restaurant on June 7, 1955, at about 3:30 a. m. On that occasion Grillo produced an application for membership in the club. Officer Cabral filled out the application, and Grillo issued him a guest card. Officer Cabral handed a bottle of whiskey to Mrs. Grillo, who pasted a label on it with his name and handed it to the bartender. The whiskey was poured

from their bottle and was mixed with ginger ale, and the detectives had several drinks.

The detectives came back again on June 8, 1955, at 2:40 a. m. Grillo greeted them and ushered them to a table near the bar. Again they had several drinks. Again the whiskey was poured from Officer Cabral's bottle. Again the detectives had their drinks. After they paid Grillo for the drinks which they ordered on that day and the previous day, they departed.

Mrs. Grillo was convicted of violating Section 83(a) on January 29 and June 7. She was fined $50 in the first case, and $10 in the second case.

Grillo was convicted of violating Section 99(c) on June 8. He was fined $50.

I.

The contention of Mrs. Grillo was that Section 83(a) is invalid because Chapter 763 of the Laws of 1941, which added this section to the Alcoholic Beverages Law, did not comply with the provision in Article 3, Section 29, of the Constitution of Maryland that "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title."

The title of the 1941 Act reads as follows:

"An Act to add a new section to Article 2B of the Annotated Code of Maryland (1939 Edition), title 'Alcoholic Beverages', sub-title 'Regulations and Restrictions', said new section to be known as Section 42A, and to follow immediately after Section 42 of said Article, prohibiting the consumption of alcoholic beverages between the hours of 2 A. M. and 6 A. M. on any day at public places not licensed to sell the same."

The body of the Act reads as follows:

"42A. Between the hours of 2 A. M. and 6 A. M. on any day no person shall consume any alcoholic beverage on any premises open to the general public, any place of public entertainment, or any place at which set-ups or other

component parts of mixed alcoholic drinks are sold under any license issued under the provisions of Article 56 and no owner, operator or manager of said premises or places shall knowingly permit such consumption.

"Any person found consuming any alcoholic beverage on any premises open to the general public, and any owner, operator or manager of said premises or places who shall knowingly permit such consumption between the hours provided by Section 42A of the herein entitled Act, shall be guilty of a misdemeanor, and upon conviction, shall be fined not more than fifty dollars ($50.00) and not less than five dollars ($5.00)."

Mrs. Grillo complained that the title mentions only "public places," while the body of the Act applies to (1) any premises open to the general public; (2) any place of public entertainment; and (3) any place at which setups or other component parts of mixed alcoholic drinks are sold under any license issued under the provisions of Article 56.

We are inclined to doubt that the Lyre Club is a *bona fide* private club. It partakes of the nature of a public restaurant. In any event, even assuming that there is a defect in the title of the 1941 Act, any such defect is now immaterial, because Article 2B was repealed and re-enacted in its entirety by Chapter 501 of the Laws of 1947. The title of the 1947 Act declares that it is an Act to repeal Article 2B of the Code, title "Alcoholic Beverages," and all amendments thereof and additions thereto, and to enact in lieu thereof a new Article 2B, title "Alcoholic Beverages," revising and recodifying the alcoholic beverages laws of this State, incorporating into said Article 2B all Public Local Laws relating to alcoholic beverages, and generally rearranging and simplifying all laws having to do with alcoholic beverages. No attack is made here on the 1947 Act.

Any defect of title which may have existed in the 1941 Act by reason of a failure of the title to meet the require-

ments of the State Constitution was cured by the 1947 Act, which incorporates the 1941 Act. *State, for use of Emerson v. Baltimore & Ohio R. Co.*, 171 Md. 584, 190 A. 231; *Jones v. State*, 207 Md. 481, 115 A. 2d 273.

## II.

Grillo contended that Code Supp. 1955, art. 2B, sec. 99(c), which was inserted in the Alcoholic Beverages Law by Chapter 338 of the Laws of 1955, violates the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

Section 99(c), which applies only to Prince George's County, provides as follows:

> "Notwithstanding the provisions of § 83 of this article, in Prince George's County between the hours of 2:00 A. M. and 6:00 A. M. on any day, no person shall consume any alcoholic beverages on any premises open to the general public, any place of public entertainment, any premises occupied regularly by a private club or organization, or any place at which setups or other component parts of mixed alcoholic drinks are sold directly or indirectly. * * *"

This local law makes it a misdemeanor to consume any alcoholic beverage on any such premises or in any such place during the hours specified, and a misdemeanor for any owner, operator, manager, waiter, server, or employee of any such premises or any such place to knowingly permit such consumption on those premises or in that place during the hours specified.

Grillo contended that this law infringes constitutional rights because it prohibits the drinking of alcoholic liquors on premises occupied regularly by a private club or organization, and at any place at which setups or other component parts of mixed alcoholic drinks are sold, although such club or organization or other place is not required to have a license. He argued that the State cannot prohibit the drinking of alcoholic liquors except at licensed places of business, which are subject to regulation.

The Twenty-first Amendment, which repealed the Eighteenth Amendment, sanctions the right of a State to legislate concerning intoxicating liquors brought from without the State, unfettered by the Commerce Clause. There is now no question that a State may absolutely prohibit the manufacture of intoxicants, their transportation, sale, or possession, irrespective of when or where produced or obtained. Furthermore, the State may adopt any measures that are reasonably appropriate to effectuate these prohibitions and exercise full police authority with respect to them. *Crane v. Campbell*, 245 U. S. 304, 38 S. Ct. 98, 62 L. Ed. 304; *Samuels v. McCurdy*, 267 U. S. 188, 45 S. Ct. 264, 69 L. Ed. 568, 37 A. L. R. 1378; *Ziffrin, Inc., v. Reeves*, 308 U. S. 132, 60 S. Ct. 163, 84 L. Ed. 128

Grillo feared that the prohibition of drinking of alcoholic liquors on "any premises occupied regularly by a private club or organization" after 2 a. m. might be construed to prohibit the drinking of beverages after 2 a. m. by a group of neighbors which meets regularly at the home of one of its members. We do not think the law can be so construed. "To occupy" means to hold in possession; to hold or keep for use. *Missionary Society of M. E. Church v. Dalles City*, 107 U. S. 336, 2 S. Ct. 672, 27 L. Ed. 545. We cannot agree that a private home where members of a club regularly meet may be considered as being regularly occupied by the club.

The purpose of Section 99 (c) is to tighten the Alcoholic Beverages Law by preventing the operation of any place by a club having patrons who call themselves members and who continue drinking after 2 o'clock in the morning by bringing bottles of whiskey into the restaurant. This provision does not infringe the Due Process Clause of the Fourteenth Amendment. The Due Process Clause was not designed to interfere with the police power of the State to prescribe regulations calculated to promote the health, morals, and good order of the people. *State v. Phillips*, 109 Miss. 22, 67 So. 651, 653, is a case in point. The defendant in that case

was convicted of violating a statute making it unlawful to carry intoxicating liquor into a social club. The Court, in holding that the statute was a proper exercise of the police power, made the following comment:

"It is well known to those familiar with the enforcement of the laws against the sale of intoxicants that many schemes, artifices, and devices have been originated for the purpose of evading the law. Clubs and lodges have organized for no other purpose than to sell intoxicating liquors. The conscienceless promoters often select names for their club or lodge which suggest to the uninitiated that these organizations have no purpose other than to assist the moral and religious element of the community in every movement having for its purpose the moral welfare of the community.

"To check the pernicious and cunning activities of the professional criminal * * * the Legislature adopted a broad classification to cover any and all social clubs. This was necessary to make the statute at all efficient. In this statute the limitation upon the use of liquor is confined to social clubs. The owner may carry it anywhere else and use it to any extent. There is no attempt to destroy the personal liberty of the owner to enjoy the seductive influence of liquor, or even to get drunk."

As we find no valid reason to hold either of the challenged sections of the statute unconstitutional, the three convictions must be affirmed.

*Judgments affirmed, with costs.*